IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

GARRETT KNISLEY, as Administrator for the )
Estate of Rhonda Michelle Bock-Deleon, Deceased )
)
v. ) NO. 1:16-0091
)
HICKMAN COUNTY, TENNESSEE, et al. )

**MEMORANDUM**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties have consented to have the magistrate judge conduct any and all proceedings in this action, including the entry of a final judgment. *See* Order entered February 1, 2017 (Docket Entry No. 29).

Pending before the Court is the motion to dismiss filed by Defendants Tommy McClanahan and the City of Centerville. *See* Docket Entry No. 6. Plaintiff has responded in opposition to the motion. *See* Docket Entry No. 27. For the reasons set forth below, the motion is granted.

**I. BACKGROUND[1]**

In the early evening hours of October 27, 2015, Rhonda Michelle Brock-Deleon ("Deleon") and Freddy Breece ("Breece") were passengers in a vehicle that was being driven by Rachel Arnold ("Arnold") in Hickman County, Tennessee. The vehicle was stopped for a traffic infraction by Hickman County Sheriff's Deputies Tory Bowman ("Officer Bowman") and Leif Carlsen ("Officer Carlsen"). *See* Complaint at ¶ 25. Prior to the stop at approximately 6:32 p.m., a confidential

---

[1] The background facts are summarized from the allegations contained in the Complaint (Docket Entry No. 1) and for purposes of the pending motion to dismiss only are accepted as true.

informant had advised Officer Bowman that Breece and Deleon were planning on making a drug sale at a local residence and also informed him of the make and model of the vehicle in which they would be traveling, the name of the vehicle owner, and the amount and type of drug that was to be involved in the sale. *Id*. at ¶¶ 22-23.

Upon being stopped and questioned by Officer Bowman, Arnold told Officer Bowman that Breece had drugs "in his pants" and gave consent for a search of the vehicle. *See* Complaint at ¶ 27. Breece and Deleon were directed to exit the vehicle and were frisk searched. *Id*. at ¶ 28. After a search of the vehicle uncovered a drug "meth" pipe and a glucose test strip bottle with pills in the back seat, Breece and Deleon were arrested and taken into custody. *Id*. at ¶ 33. Officer Bowman transported Breece to the Hickman County Jail ("Jail"). Breece was transported to the Jail by Officer Tommy McClanahan ("Officer McClanahan"), a police officer with the City of Centerville Police Department who had stopped at the arrest scene, and arrived at the Jail at approximately 8:38 p.m. *Id*. at ¶¶ 35-36. Arnold was released with a verbal warning regarding the traffic infractions.

While at the arrest scene, Officer Bowman noticed Deleon walking with her hands over her buttocks in a manner that made him believe that she was attempting to conceal additional drugs on her person, a belief that he conveyed to others at the scene prior to Deleon being transported to the Jail. *Id*. at ¶¶ 29 & 31. Although Deleon was searched by Jail staff Felicia Roberson ("Roberson"), Tiffani Mari Shelton ("Shelton"), and Shanda Reneee Hall ("Hall") after arriving at the Jail and no drugs were discovered, at some point that evening, Officer Bowman was notified by Jail staff that Deleon had been observed squatting in the corner of a Jail cell and had pulled a white bottle from her rectum. *Id*. at ¶¶ 39 and 43. Officer Bowman subsequently discovered a white pill bottle in the booking area containing a bag with one gram of a white crystal substance. *Id*. at ¶ 40. He was

2

further informed by Roberson that she believed Deleon had ingested narcotics that were located inside the pill bottle. *Id*. at ¶ 42. At some point that evening, Defendant Bowman conducted a recorded interview of Deleon, at which time she was "clearly exhibiting signs of serious effects of drugs." *Id.* at ¶ 41.

At approximately 12:10 a.m. on October 28, 2015, the Hickman County Ambulance Service was called about Deleon. *Id.* at ¶ 45. The paramedics who arrived at the Jail were told that Deleon had ingested 1-3 grams of methamphetamine and Percocet about an hour prior thereto. *Id.* at ¶ 46. Although Plaintiff was taken for emergency treatment to a local hospital and then to a larger hospital, her life was unable to be saved and she was pronounced dead at 2:09 p.m. on October 28, 2015. *Id.* at ¶¶ 49-51. The cause of death was noted as acute methamphetamine intoxication, and autopsy findings noted two empty plastic bags were found in both her stomach and duodenum and one intact plastic bag with white contents was found in her vagina. *Id.* at ¶ 52.

On October 25, 2016, Garrett Knisley, the Administrator for the Estate of Deleon, filed this lawsuit seeking damages and other relief against Hickman County Tennessee ("Hickman County"), the City of Centerville, Tennessee ("City of Centerville"), Bowman, Carlsen, Roberson, Shelton, Hall, Hickman County employee Christopher Jolly ("Jolly"), McClanahan, and "John Does I-X." Plaintiff brings a count under 42 U.S.C. § 1983 for a violation of Deleon's civil rights (Count I), as well as counts under state law for violations of Tennessee Code Annotated ¶ 41-21-201 and ¶ 41-21-204 (Count II), and for negligence (Count III). Hickman County, Bowman, Carlsen, Roberson, Shelton, Hall, and Jolly (hereinafter referred to collectively as the "Hickman County Defendants") filed a joint answer to the Complaint. *See* Docket Entry No. 4.

## II. MOTION TO DISMISS

In lieu of an answer, the City of Centerville and McClanahan (hereinafter referred to collectively as the "Centerville Defendants") filed the pending motion, seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendant McClanahan argues that Plaintiff fails to allege facts that plausibly show that he violated Deleon's constitutional rights. He further raises the defense of qualified immunity from the assessment of any individual damage against him for a violation of Deleon's constitutional rights. The City of Centerville contends that, in the absence of allegations that support a conclusion that Defendant McClanahan violated Deleon's constitutional rights, the claim against it under 42 U.S.C. § 1983 must also fail. The City of Centerville also contends that, 1) there are no facts alleged in the Complaint supporting a claim that an unconstitutional policy or custom of the City of Centerville caused any of Deleon's injuries, and 2) Count II of the Complaint fails to support a claim against it because it has no role in the management of detainees or prisoners at the Jail. Finally, the City of Centerville asserts that Plaintiff's negligence claim under the Tennessee Governmental Tort Liability Act ("TGTLA") arises out of the same circumstances giving rise to Plaintiff's civil rights claims under § 1983 and that it retains immunity against the negligence claim under Tenn. Code Ann. § 29-20-205(2). Alternatively, the City of Centerville requests that the Court decline to exercise supplemental jurisdiction over the TGTLA claim under principles of comity. *See* Memorandum in Support (Docket Entry No. 7).

In response, Plaintiff argues that the Complaint's allegations are sufficient to state a claim that Defendant McClanahan violated Deleon's constitutional rights. Plaintiff contends that the facts alleged to be known to the officers at the scene of Deleon's arrest and the facts which can be

reasonably inferred to have been known by Defendant McClanahan are enough to state a plausible claim that he was deliberately indifferent to a substantial risk of serious harm to Deleon's health and safety that was caused by her actual drug ingestion and by the possibility of the ingestion of drugs that she had hidden on her person. *See* Response (Docket Entry No. 27). Plaintiff further argues that it has sufficiently stated a municipal liability claim under Section 1983 by pleading that Defendant McClanahan's individual conduct occurred in compliance with the policies, practices, and customs of the City of Centerville and was ratified by the City of Centerville. Plaintiff finally alleges that it has adequately pled common law negligence claims against the City of Centerville that are not barred by the TGTLA and that should be heard by this Court. *See* Response (Docket Entry No. 27).

### III. STANDARD OF REVIEW

A motion to dismiss is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in Plaintiff's favor, and draw all reasonable inferences in favor of Plaintiff. *See In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir.2009). Although the complaint need not contain detailed factual allegations, Plaintiff must provide the grounds for the entitlement to relief sought. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations contained in the complaint must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential

5

allegations respecting all of the material elements to sustain a recovery under some viable legal theory. *Id.*; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. *See Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated in part on other grounds*, *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV. CONCLUSIONS

A. The Applicable Constitutional Protections

Although Plaintiff alleges that Defendants violated the rights secured to Deleon by the Fourth, Eighth, and Fourteenth Amendments, *see* Complaint at ¶¶ 61 and 66, the protections of the Eighth Amendment apply to convicted prisoners, not pretrial detainees, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), and Plaintiff concedes that he is not proceeding upon the basis of Fourth Amendment protections. *See* Response at 7.

As a pretrial detainee, it is settled that Plaintiff's constitutional rights at issue arise from the Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015); *City of Revere*, *supra*; *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008). Within the protections provided to pretrial detainees is the right to a certain level of attention to a detainee's need for health and safety. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). To sustain a cause of action for a violation of this protection, a

plaintiff must show that he has been injured because a defendant acted with deliberate indifference to a substantial risk of serious harm to the detainee's health or safety. *Id*. Such a claim encompasses both an objective and a subjective component. *Estate of Harbin v. City of Detroit*, 147 Fed.App'x 566, 570 (6th Cir. 2005). To satisfy the objective component, there must be a showing that risk of harm or medical need at issue was substantial and serious. In the absence of a diagnosed medical need, the risk or harm or medical need must be so patent or obvious that "even a layperson would easily recognize the necessity" for prompt attention or treatment. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2005).

With respect to the subjective standard of deliberate indifference, the Sixth Circuit has explained:

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the detainee's] health and safety. *Farmer v. Brennan*, 511 U.S. 825, 835-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, 114 S.Ct. 1970. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments. *Id*. at 837-38, 114 S.Ct. 1970.

*Watkins*, 273 F.3d at 686.[2]

---

[2] The Supreme Court held in *Kingsley* that excessive force claims brought by pretrial detainees are measured by an objective standard. While *Kinglsey* may foreshadow how other constitutional claims made by pretrial detainees should be analyzed, neither the Supreme Court nor the Sixth Circuit has yet to expand the holding in *Kingsley* to other claims, and the Court will thus continue to apply a subjective standard of deliberate indifference to a claim such as the one brought by Plaintiff. *Cf. Morabito v. Holmes*, 628 Fed.App'x 353, 358 (Oct. 7, 2015) (applying subjective deliberate indifference standard to analysis of medical care claim post-*Kingsley*).

B.  Section 1983 Claims

Defendant McClanahan raises the defense of qualified immunity to the Section 1983 claim brought against him.  Qualified immunity shields government officials performing discretionary functions from civil damages liability in personal-capacity lawsuits so long as their actions do not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  To determine whether qualified immunity applies when the defense is raised in the stance of a motion to dismiss, the Court uses the following two-step analysis: 1) viewing the facts in the light most favorable to Plaintiff, do the allegations give rise to a constitutional violation; and 2) was the right at issue clearly established at the time of the incident.  *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015); *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  It is up to the discretion of the Court as to which of the two prongs of the qualified immunity analysis should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  It is Plaintiff's burden to show that Defendant McClanahan is not entitled to qualified immunity, *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

In analyzing the constitutional claim brought against Defendant McClanahan, it is important to note that McClanahan's only alleged interaction with Plaintiff consisted of taking her into custody at the scene of the arrest and transporting her to the Jail.  Plaintiff makes no allegations that McClanahan had any interaction with Deleon after delivering her to the Jail, and any conduct occurring at the Jail cannot form the basis for a constitutional claim against him.

Even though Defendant McClanahan's involvement with Deleon was limited, Plaintiff points to the following allegations as support for a plausible Section 1983 claim against him: 1) the officers

at the scene believed Deleon to have smoked methamphetamine and to have possibly taken other drugs; 2) Officer Bowman witnessed Deleon acting in a manner that led him to believe that she was hiding additional drugs on her person; and 3) Officer Bowman communicated this belief to the other officers at the scene. In light of these facts, Plaintiff argues that Defendant McClanahan knew that Deleon faced a substantial risk of serious harm because of potentially-fatal methamphetamine poisoning and consciously disregarded this risk by transporting her to the Jail instead of taking steps to seek medical attention for her.[3] *Id*. at 5-8.

The Court disagrees that these factual allegations relied on by Plaintiff even if taken as true and viewed in the light most favorable to Plaintiff, are sufficient to state a plausible claim that Defendant McClanahan violated Deleon's constitutional rights. While Deleon's death is tragic, the allegations of what occurred at the arrest scene are unremarkable. There are no allegations that Deleon was in obvious distress or in obvious need of medical attention at the time. There are no allegations that she or anyone else stated anything to the officers that indicated that she needed medical attention. There are no allegations that Deleon was observed actually swallowing or attempting to swallow any substance. In short, there are no factual allegations in the Complaint that support a conclusion that a substantial risk of serious harm existed at the time of Deleon's arrest about which McClanahan was aware yet ignored.

Plaintiff's arguments to the contrary are unpersuasive. Certainly, Deleon was not required to "collapse in an unresponsive heap," *see* Response at 9, before there would be a constitutional duty

---

[3] Although Plaintiff also appears to suggest that Defendant McClanahan should have conducted "a thorough search for latent dangers" and, presumably, uncovered the drugs Deleon had hidden on her person, *see* Response at 8, Plaintiff nonetheless acknowledges that he is not proceeding on a theory of a "failure to search." *Id*.

to provide medical attention to her. However, there must have been more indicators of a need for medical attention than are alleged in this case. Further, the Court does not find, as argued by Plaintiff, that the City of Centerville Defendants have conceded in their motion that Deleon had a serious medical need at the time of her interactions with Defendant McClanahan. *Id*. at 5. To the contrary, Defendant McClanahan specifically states that "[t]he Complaint is devoid of any factual allegations showing that decedent manifested any signs of a "serious medical condition" while in the presence of Officer McClanahan." *See* Memorandum in Support (Docket Entry No. 7) at 6.

The Court's review of relevant and analogous case law within the Sixth Circuit supports dismissal of the Section 1983 claim. An arrestee's mere intoxication, by itself, is insufficient to alert an arresting officer that a serious risk exists to the arrestee's health and safety. *See Border v. Trumbull Cty. Bd. of Comm'rs*, 414 Fed.App'x 831, 837 (6th Cir. 2011). Further, a plaintiff's assertion that an officer should have known that a pretrial detainee had ingested drugs does not suffice to establish a claim of deliberate indifference. *Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir. 2003); *Watkins*, *supra*. *See also Meier v. Cnty. of Presque Isle*, 376 Fed.Appx. 524, 528–29 (6th Cir. 2010) (holding that detainee's intoxication alone did not put officers and jail officials on notice that detainee, who lapsed into a coma from a head injury, needed medical attention, where the detainee cooperated, communicated effectively, and walked unassisted); *Spears v. Ruth*, 589 F.3d 249, 255–56 (6th Cir. 2009) (holding that there was no evidence that the defendant police officer was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed to the pretrial detainee, who died from smoking crack cocaine, or that the officer drew that inference and chose to disregard the risk, for purposes of a claim of deliberate indifference to serious medical needs); *Smith v. Pike*, 338 Fed.Appx. 481, 482 (6th Cir. 2009) (holding that defendants were entitled

to qualified immunity because "[t]he evidence does not establish that jail officials were aware that [the detainee who died from drug overdose] had a sufficiently serious medical need or that they acted in conscious disregard by refusing medical care[;][a]lthough [the detainee] was clearly intoxicated, jail personnel had no indication that she was experiencing an overdose, and she did not appear to exhibit symptoms that would make it objectively clear that she had overdosed or was in immediate need of medical attention"); *Weaver*, 340 F.3d at 410–12 (holding that police officer was not deliberately indifferent to the medical needs of pretrial detainee, who died in custody from a drug overdose, where the officer did not have knowledge that the detainee ingested cocaine and the detainee repeatedly denied swallowing drugs); *Watkins*, 273 F.3d at 685–86 (holding that arresting officers and jail personnel were not deliberately indifferent to a pretrial detainee's rights in violation of the Fourteenth Amendment, where the detainee, who appeared to be drunk or high when he arrived at the jail, repeatedly denied that he had ingested cocaine and refused medical treatment, but died approximately three hours after his arrival).

The Court's finding that Plaintiff's factual allegations do not state a constitutional claim against Defendant McClanahan warrants the dismissal of the Section 1983 claim against him without full analysis of the qualified immunity defense. *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009). Furthermore, the Court's finding is also sufficient to warrant the dismissal of the municipal liability claim against the City of Centerville. In the absence of facts showing a viable claim that McClanahan, as the individual police officer with the City of Centerville, violated Deleon's constitutional rights, there is no basis for a Section 1983 claim of municipal liability against the City of Centerville. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 367 (6th Cir. 2017); *Lee v. Metro. Gov't*

*of Nashville & Davidson Cnty.*, 432 Fed.Appx. 435, 449 (6th Cir. 2011). All claims brought under Section 1983 against Defendants McClanahan and the City of Centerville will be dismissed.

C. Count II of the Complaint

Count II of the Complaint is based upon allegations of negligence *per se* for alleged violations of two Tennessee statutory provisions, Tenn. Code Ann. § 41-21-201 and Tenn. Code Ann. § 41-21-204, that pertain to the treatment of inmates. *See* Complaint at 19-20. Although Count II is asserted against the collective Defendants, Plaintiff appears to concede the this Count is not applicable to the City of Centerville and McClanahan. *See* Response at 9, n.1. Accordingly, Count II will be dismissed as to these two Defendants.

D. TGTLA Claim

In Count III, Plaintiff brings claims for negligence against the City of Centerville. The City of Centerville raises three challenges to this count: 1) failure to state a claim for relief; 2) statutory immunity; and 3) dismissal based on principles of comity. *See* Memorandum in Support at 9-11. For the reasons set forth below, Plaintiff's negligence claims against the City of Centerville will be dismissed.

The Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 *et seq.*, codifies Tennessee's common law rules concerning sovereign immunity and sets out exceptions to the general grant of immunity from suit that applies to governmental entities. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Thus, claims against a governmental entity such as the City of Centerville, must be brought in strict compliance with the TGTLA. *See*

Tenn. Code Ann. § 29-20-201(a) ("Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary."); *Crawley v. Hamilton County*, 193 S.W.3d 453, 456 (Tenn. 2006).

The Court's general preference is to decline discretionary supplemental jurisdiction under 28 U.S.C. § 1367(c) over TGTLA claims, leaving resolution of such claims and the issues of law arising from the TGTLA to the Tennessee courts. This preference is consistent with other rulings within this District. *See Heyne v. Metropolitan Nashville Public Schools*, 686 F.Supp.2d 724, 735 (M.D.Tenn. 2009); *Lee v. Metropolitan Gov't of Nashville and Davidson County*, 2008 WL 501327 (M.D. Tenn. Feb. 21, 2008) (Trauger, J.); *Spurlock v. Whitley*, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997).

However, after review of Count III as alleged against the City of Centerville, the Court sees no reason to delay resolution of this count and exercises its discretion to review the count. *See Johnson v. Gannon*, 2010 WL 1658616 at *7 (M.D. Tenn. Apr. 23, 2010) (Echols, J.) (the court heard TGTLA claim in lieu of dismissing the claim so it could be pursued in state court). Although the TGTLA removes governmental immunity from suits for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment," Tenn.Code Ann. § 29-20-205, the TGTLA specifically preserves immunity for suits involving an injury that arise out of "[t]he exercise or performance or the failure to exercise or perform a discretionary function," Tenn.Code Ann. § 29-20-205(1), or out of "civil rights." Tenn.Code Ann. § 29-20-205(2).

The Court finds that these exceptions preserve the City of Centerville's immunity from Plaintiff's negligence claims under the TGTLA. To the extent that the negligence claims are based upon the same facts and circumstances that underlay Plaintiff's civil rights claim under Section 1983, the City of Centerville retains its immunity from suit. *See Bryant v. City of Memphis*, 644 Fed.App'x 381, 384 (6th Cir. 2016); *Partee v. City of Memphis, Tenn.*, 449 Fed.App'x 444, 448 (6th Cir. 2011); *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). *Lynn v. Davis*, 2016 WL 3553029 at *6 (M.D. Tenn. June 29, 2016) (Sharp, J.) ("Plaintiff's negligence and deliberate indifference claims arise from the same circumstances and are based on the same facts. As such, a claim for negligence against Overton County is barred by the TGTLA.").

In an effort to get around the "civil rights" exception to the wavier of immunity, Plaintiff argues that he has pled, in the alternative to the Section 1983 claim, common law negligence claims that are distinct and do not arise out of the same circumstances as the Section 1983 claim. *See* Response at 10-15. However, this argument does not carry the day for Plaintiff. As summarized by Plaintiff, the alternatively pled negligence claims "are for failing to provide adequate 'custodial care, treatment, and services,' failing to staff agencies with 'sufficient numbers of persons to meet the custodial needs' of detainees, failing to exercise due care in sufficiently hiring, training, and supervising employees, and the like." *See* Response at 11. Such alleged actions, as well as the additional negligence allegations in the Complaint, *see* Complaint at ¶¶ 83-87, involve matters, actions, and decisions that fall squarely within the TGTLA's discretionary-function exception, for which the City of Centerville retains immunity. *See Savage v. City of Memphis*, 620 Fed.App'x 425, 429 (6th Cir. 2015) ("the sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged

14

wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary function exception."); *Peatross v. City of Memphis*, 2015 WL 13021901 at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016). Plaintiff has not alleged grounds for a negligence claim against the City of Centerville that is based upon anything that would fall outside the discretionary-function exception to the wavier of immunity.

For the reasons set out above, the Court will grant the motion to dismiss brought by Defendants Tommy McClanahan and the City of Centerville as to all claims brought against them. An appropriate Order will enter.

BARBARA D. HOLMES
United States Magistrate Judge